HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

ALBERTO FLORES-RAMIREZ,

Defendant.

Case No. CR10-5373RBL

ORDER

THIS MATTER comes on before the above-entitled Court upon Defendant Alberto Flores-Ramirez' Motion to Suppress [Dkt. #247]. Having considered the entirety of the records and file herein, the Court finds and rules as follows:

**I. INTRODUCTION**

The defendant seeks to suppress the approximately one kilogram of heroin, six grams of cocaine, digital scales, drug packaging materials, and $5,665 in cash found at his residence as a result of the execution of a search warrant issued by United States Chief Magistrate Judge Karen L. Strombom. While conceding that the affidavit provides probable cause that he was involved in drug dealing, he nonetheless argues that there was insufficient evidence linking him to 10210 Kline Street SW, Apartment 14, Lakewood, Washington (Subject Premises 18 in the affidavit), and thus insufficient evidence for that premises to have been searched.

## II.  FACTS

The affidavit in support of the search warrant set forth the following:

In the Spring of 2010, Drug Enforcement Administration ("DEA") agents in Tacoma, Washington., conducted a series of court-authorized wiretaps on telephones used by a large Western Washington heroin-distribution organization.  Local police officers from Grays Harbor County, Lakewood, and Thurston County also made a series of undercover drug buys.  The narcotics, primarily heroin, were transported into Washington from Mexico, then distributed to the members of the organization who are in charge of the street-level distribution.

Undercover officers purchased anywhere from a quarter-ounce of heroin to four ounces at a time.  Each time, the method of operation was similar.  The undercover officer ("UC") placed a call to the "dispatcher" who asked how much the undercover wanted to buy, then the dispatcher directed the undercover officer to a specific location within the Tacoma/Lakewood area.  At the location given by the dispatcher, a "runner" (a different person than the one who took the call) arrived, and the runner led the undercover officer's vehicle up and down side streets in an attempt to identify police surveillance.  When the runner was satisfied they were not being followed, the runner pulled along the curb and stopped.  At that point, the undercover officer pulled up next to the runner's vehicle and the exchange of money for drugs was conducted.  The runner then left the area.  Because of the extensive counter-surveillance conducted by the runners and dispatchers, and their use of one conspirator (the dispatcher) to contact the customer and another conspirator (the runner) to deliver the drugs, it was difficult to follow and identify members of this drug trafficking organization.

In early March 2010, a United States District Court Judge authorized a federal wire tap of several of the suspects' telephone.  DEA, assisted by local police agencies, intercepted telephone conversations on the telephones used by co-conspirators Ramon Hernandez Gomez, Mario Gonzalez Rubio Garcia, Margarito Lemus Estrada and Jose Manuel Campos Pineda, also known as "Piojo."  Rubio Garcia and Lemus Estrada were two of the dispatchers that controlled the street level distribution of heroin.  Campos Pineda was the source of drugs for Lemus Estrada and Rubio Garcia.[1]  Flores-Ramirez is alleged to be a

---

[1] The previous three paragraphs were taken almost verbatim from the plea agreement entered into by one of defendant's co-conspirators.

ORDER
Page - 2

1 runner for Lemus-Estrada.

2 After setting forth facts that support the allegations that Flores-Ramirez is a runner, the affiant
3 discussed Subject Premises 18. On the evening of May 27, 2010, at approximately 8:30 p.m., agents
4 observed Flores-Ramirez drive into the parking lot of the apartment complex located at 10210 Kline
5 Street SW. Shortly thereafter agents observed Valencia-Garcia arrive at the parking lot in a vehicle they
6 recognized. At the same time, agents observed a Hispanic male exit Apartment 14 and leave about a
7 minute later. Shortly thereafter, agents observed Flores-Ramirez and two other Hispanic males leave in a
8 known vehicle. Based on previously intercepted phone calls, the affiant believed that Valencia-Garcia
9 was either delivering heroin to, or picking up money from, Flores-Ramirez.

10 The affiant also recounted that during the previous six days agents observed the vehicle associated
11 with Flores-Ramirez parked in the apartment complex in the space for Apartment 14. A check of the
12 records of Lakeview Power and Light indicated that the subscriber for Apartment 14 at 10210 Kline
13 Street, SW, Lakewood is "Alboner Flores-Ramirez."

### III. DISCUSSION

15 This Court's review of the "validity of a search warrant depends on the sufficiency of what is
16 found within the four corners of the underlying affidavit." *United States v. Taylor*, 716 F.2d 701, 705 (9th
17 Cir. 1983). The affidavit must establish probable cause to believe that contraband or evidence will be
18 found a the place to be searched. Fed. R. Crim. P. 41. Probable cause exists when, considering the
19 "totality of the circumstances," an issuing judge can reasonably conclude that there is a "fair probability
20 that contraband or evidence of a crime will be found at a particular place." Courts have long recognized
21 that evidence of drug trafficking is likely to be found at the residences of drug traffickers. *See United*
22 *States v. Angulo-Lopez*, 781 F.2d 1394, 1399 (9th Cir. 1986). *Illinois v. Gates*, 462 U.S. 213, 238 (1983).
23 The issuing judge's finding of probable cause is entitled to great deference. *United States v. Terry*, 911
24 F.2d 272, 275 (9th Cir. 1990).

25 The affidavit need only establish "a reasonable nexus between the activities supporting probable
26 cause and the locations to be searched." *United States v. Ocampo*, 937 F.2d 485, 490 (9th Cir. 1992). "In
27 making this determination, the [issuing judge] may rely on the conclusions of experienced officers
28 regarding where evidence is likely to be found." *Id.*

1    In this case there was more than enough evidence for the Chief Magistrate Judge to reasonably
2 conclude that there is a fair probability that drugs or other evidence of a crime will be found at 10210
3 Kline Street SW, Apartment 14, Lakewood, Washington.  Agents observed Flores-Ramirez' vehicle
4 parked there for the six days prior to applying for the warrant.  Also, agents saw Flores-Ramirez and
5 Valencia-Garcia, a suspected member of the conspiracy, together at the apartment complex, and later saw
6 Lemus-Estrada enter Apartment 14 and exit quickly.  The Chief Magistrate Judge reasonably could have
7 concluded, as the affiant did, that Valencia-Garcia was there to either deliver heroin to, or pick up money
8 from, Flores-Ramirez.  Finally, the fact that the power records for the residence were in a name that is
9 almost identical to the defendant's adds ample support to the Chief Magistrate Judge's conclusion that it
10 would be reasonable to search for evidence of drug trafficking at Subject Premises 18.

11    Because probable cause is clearly present for the search, this Court need not address the good faith
12 of the officers in executing the warrant.

13    Defendant Alberto Flores-Ramirez' Motion to Suppress [Dkt. #247] is **DENIED.**

14    **IT IS SO ORDERED.**

15    The Clerk shall send uncertified copies of this order to all counsel of record, and to any party
16 appearing pro se.

17    Dated this 18th day of November, 2010.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE